CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

DEC 19 2008

JOHN F. CORCORAN, CLERK
BY: _____
DEPUTY CLERK

STEFANIE A. RODEN,                     )
and                                    )
JAMES D. HABURN,                       )
                                       )
      Plaintiffs,                     )     Civil Action No. 7:07CV00252
                                       )
v.                                     )
                                       )     **MEMORANDUM OPINION**
BHULA DIAH,                            )
LINDA KNIGHT,                          )
STUART COHEN,                          )     By:    Hon. Glen E. Conrad
JAYANT PATEL,                          )     United States District Judge
PRAKRUTI HOSPITALITY, LLC,             )
and                                    )
TERRY GRIMES,                          )
                                       )
      Defendants.                     )

This action stems out of an altercation that took place at the plaintiffs' place of employment with a co-worker and the plaintiffs' subsequent termination, as well as from the criminal proceedings against the alleged perpetrator of the incident. The plaintiffs, proceeding pro se, have made numerous claims under both federal and state law. This matter is presently before the court on the defendants' motion to dismiss. For the reasons set forth below, the motion will be granted.

## FACTUAL AND PROCEDURAL BACKGROUND

The following facts, which are taken from the plaintiffs' complaint, are accepted as true for purposes of the defendants' motion to dismiss. See Estate Constr. Co. v. Miller & Smith Holding Co., 14 F.3d 213, 217-218 (4th Cir. 1994).

Plaintiff Stefanie A. Roden ("Roden") was a full-time employee of the Howard Johnson

Express Inn in Daleville, Virginia. Plaintiff James D. Haburn ("Haburn") was also employed at the Daleville Howard Johnson. Defendant Bhula Diah ("Diah") is the general manager and co-owner of the Daleville Howard Johnson. Defendant Stuart Cohen ("Cohen") is an employee of the Daleville Howard Johnson as well as its acting part-time general manager. Prakruti Hospitality, LLC ("Prakruti"), a Connecticut limited liability corporation, along with its John and Jane Doe owners and co-owners, allegedly own and operate the Daleville Howard Johnson. Defendant Jayant Patel ("Patel") is the co-owner of a Howard Johnson Express Inn in North Stonington, Connecticut.

During December of 2006, Speciality Events, a motel consulting firm located in Vancouver, Washington, recommended that Roden be promoted to the position of Sales Director at the Daleville Howard Johnson location. Defendant Linda Knight ("Knight") was a front desk clerk at the Howard Johnson and the only other contender for the position. Prior to December of 2006, Knight had engaged in intimidating conduct against Roden, including name-calling, bullying, and other insults. Roden had tolerated this conduct, however, because Roden's and Knight's working hours had only a short period of overlap. After Roden was promoted to Sales Director, however, the intimidation became more problematic as the two women started working the same shift in the same work area of the hotel.

The plaintiffs allege that Knight's abuse then worsened to include withholding mail addressed to Roden, intercepting prospective guests' faxes and not giving them to Roden, failing to pass on phone calls and messages to Roden, calling Roden names, insulting Roden in front of prospective guests, using obscene and vulgar language with Roden, and threatening Roden with bodily harm and/or death. Knight allegedly told Roden that management would not assist her

2

because Knight had "dirt" on Diah, their general manager. Roden did report these incidents to Diah on numerous occasions, however Roden claims that Diah told her to ignore Knight or to patch up their differences. Although Diah agreed that either he or Cohen would be present when Roden and Knight were together in the office, they often were not. Roden also asserts that she had complained to Diah on numerous occasions regarding Knight's and Diah's smoking in her work area, but that no action was taken by Diah.

Finally, on April 30, 2007, Roden arrived at work at the end of Knight's work shift. At that time, Knight again began to verbally abuse Roden and to threaten her with physical harm. Roden claims that Knight then refused to leave the office, unplugged the telephone, and physically attacked Roden. Knight finally departed, but made telephone calls to Roden at the workplace during which she continued her harassing behavior. Roden claims that she reported the incident to Cohen, but that Cohen took no action.

Roden then called the police who came to the hotel to investigate the incident. Roden asserts that the investigating police officer told her to consult with the Botetourt County magistrate. After Roden consulted with the magistrate the following day, he informed Roden he would issue a criminal warrant against Knight. Knight was served with a warrant at the Daleville Howard Johnson on May 3, 2007, at which time she again threatened Roden.

Cohen terminated Roden's employment the same day and ordered her off the property. Roden alleges that the reason given for her termination was the charge she was pressing against Knight. Roden later attended the criminal proceedings against Knight at which the latter was represented by defendant Terry Grimes ("Grimes"). During those proceedings, Grimes introduced evidence regarding Roden, Knight's accuser, including a copy of a lawsuit Roden and

3

Haburn had filed against the Bank of Fincastle in federal court. Knight was ultimately acquitted of the charges against her.

With regard to plaintiff Haburn, he also worked at the Daleville Howard Johnson and ostensibly witnessed the harassment visited upon Roden by Knight. Diah had allegedly told Haburn not to get involved and not to speak to Knight. On the day of the alleged attack upon Roden by Knight, Roden telephoned Haburn to inform him of the verbal abuse and to ask his advice regarding her actions. After Knight left, Haburn told Roden to report the incident to Cohen. Roden also told Haburn about the telephone calls Knight made to Roden throughout the day. When Haburn called Cohen to inform him of the events, Cohen informed him he should stay out of it or he would be fired. In fact, after Roden was terminated, Cohen allegedly informed Haburn that he would also be fired if he continued to associate with Roden. After Roden filed the instant action, Haburn claims that Cohen terminated him as well, informing him that the reason for his termination was this lawsuit, as well as his continued friendship with Roden, and that the owners of the hotel were in agreement with Cohen's actions. Diah also later informed Haburn that his employment had been terminated due to his friendship with Roden and that the hotel's owners were in agreement with this action.

In their amended complaint, the plaintiffs assert the following claims with respect to plaintiff Roden: (1) that defendant Knight used threatening, abusive, obscene communications in the workplace, in violation of Va. Code § 18.2-416; (2) that defendant Knight committed assault and battery against Roden, in violation of Va. Code § 18.2-57; (3) that defendant Knight made threatening, abusive, obscene communications to Roden by use of an electronic device, i.e., the telephone; (4) that defendants Diah and Cohen had a duty of care to protect Roden against Knight

4

and violated that duty of care by failing to do so; (5) that defendants Diah, Cohen, and Patel were negligent in their retention and supervision of Knight; (6) that defendants Diah, Cohen, and Patel conspired to terminate Roden in retaliation for her bringing charges against Knight, in violation of Va. Code §§ 18.2-409 and 18.2-499(A) and 42 U.S.C. §§ 1985 and 1986; (7) that all the defendants obstructed a legal proceeding, in violation of Va. Code § 18.2-409; (8) that all of the defendants prevented or hindered Roden's performance of a legal act, in violation of Va. Code § 18.2-499(A); (9) that all the defendants threatened, intimidated, and retaliated against Roden for filing charges against Knight, in violation of 42 U.S.C. §§ 1985 and 1986; (10) that defendants Diah, Cohen, and Patel conspired to and did violate Roden's rights to petition and access the courts under the First Amendment and to access the courts under the Fifth and Fourteenth Amendments: (11) wrongful discharge; (12) unlawful deprivation of a property interest, i.e., Roden's job; (13) disparate impact; (14) disparate treatment; (15) that the defendants deprived Roden of her right to work without discrimination; (16) that the defendants are subject to accomplice liability, vicarious liability, and liability under a theory of respondeat superior based upon their failure to cure or correct the violations previously set forth; (17) negligent infliction of emotional distress; (18) intentional infliction of emotional distress; (19) deliberate indifference to Roden's requests to stop smoking exposing Roden to secondhand smoke; (20) that defendant Grimes committed fraud on the court at the hearing before the Botetourt County General District Court; (21) that defendant Grimes violated Va. Code §§ 18.2-409 and 18.2-499(A) and 42 U.S.C. §§ 1985 and 1986 through his actions before the Botetourt County General District Court; (22) that defendant Grimes violated Roden's right to fair, adequate, meaningful, and effective access to the courts in violation of the First, Fifth and Fourteenth Amendments; and (23) that defendants

5

Grimes, Diah, Cohen, and Patel violated Roden's First Amendment rights of freedom of association, choice, and expression through their attempts to interfere with her relationship with plaintiff Haburn.

The plaintiffs also assert the following claims with respect to plaintiff Haburn: (1) conspiracy to unlawfully deprive Haburn of a property interest, i.e., Haburn's job; (2) unlawful deprivation of a property interest, i.e., Haburn's job; (3) that defendants Diah, Cohen, and Patel violated Haburn's First Amendment rights of freedom of association, choice, and expression through their attempts to interfere with his relationship with plaintiff Roden, including his termination; (4) that defendant Grimes violated Haburn's First Amendment rights of freedom of association, choice, and expression by advising Cohen, Diah, and Patel to terminate Haburn because of his relationship with Roden; and (5) that Grimes violated his rights under the First, Fifth and Fourteenth Amendments, as well as under 28 U.S.C. § 1654, by implying in state court that a matter filed by Haburn was unlawful. Based upon these claims, Roden and Haburn each claim compensatory damages of $1,000,000 from defendants Diah, Knight, Cohen, Patel, and Prakruti Hospitality, LLC and $5,000,000 from defendant Grimes as well as punitive damages of $1,000,000 from defendants Diah, Knight, Cohen, Patel, and Prakruti Hospitality, LLC and $5,000,000 from defendant Grimes.

Roden filed the original complaint in this action against Diah, Knight, Cohen, Patel, and Prakruti on May 18, 2007. Attorneys Terry Grimes and Melvin Williams entered notices of appearance for these defendants on June 7, 2007. After receiving leave of court, Roden filed the amended complaint on October 17, 2007, adding Grimes as a defendant and Haburn as a plaintiff. At a status conference before the United States Magistrate Judge on February 12, 2008,

6

it became apparent that the plaintiffs had failed to make service of process on any of the defendants because they believed it was not necessary in light of the notices of appearance filed by counsel for the defendants. In an order filed on February 28, 2008, the magistrate judge directed the plaintiffs to serve their first amended complaint on the defendants within 120 days from the date of the order.

On June 9, 2008, the plaintiffs filed return of service forms with regard to all of the defendants. In each case, the process server, Ronald L. Lawrence, Jr., indicated that the particular defendant had been served personally. In the cases of defendants Diah, Cohen, and Patel, however, the summons was directed to the respective defendant in the care of the registered agent for Prakruti at the agent's address in Salem, Virginia. The defendants, now represented only by Melvin Williams after Grimes was added as an additional defendant, then filed a motion to dismiss the amended complaint on July 30, 2008 pursuant to Federal Rules of Civil Procedure 12(b)(2) as to defendant Patel for lack of personal jurisdiction; 12(b)(4) and (5) and 4(m) as to defendants Diah, Cohen, Patel and Grimes for insufficient process, insufficient service of process, and failure to serve within 120 days; and 12(b)(6) as to all defendants for failure to state a claim upon which relief can be granted. After both parties requested extensions of time for their responses and replies, which were granted, the parties have now fully briefed the defendants' motion to dismiss, and appeared before the court for a hearing on the motion.

## DISCUSSION

I.    **Motion to Dismiss Defendant Patel Pursuant to Rule 12(b)(2)**

Defendant Patel contends that he should be dismissed from this action pursuant to Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction. The party asserting personal

7

jurisdiction bears the burden of "proving the facts necessary to the assertion of such jurisdiction

by a preponderance of the evidence." <u>Abel v. Montgomery Ward Co., Inc.</u>, 798 F. Supp. 322,

324 (E.D. Va. 1992). Patel maintains that the complaint identifies him only as the co-owner of a

Howard Johnson Express Inn located at 121 Providence New London Turnpike, North

Stonington, Connecticut 06359. <u>See</u> First Amended Complaint at 2. Therefore, Patel concludes

that the facts alleged by the plaintiffs are insufficient to demonstrate that the court has

jurisdiction over his person.

The court believes that the complaint's description could be construed as identifying Patel

as a co-owner of the Howard Johnson in Daleville but with a Connecticut mailing address.

Throughout the complaint, the plaintiffs allege that Patel participated in the decision to promote

Roden and agreed that Roden should be terminated. <u>See</u> First Amended Complaint at 4, 9.

Therefore, the court finds that the plaintiffs have alleged that Patel was one of the co-owners of

the Daleville Howard Johnson who participated in the employment actions allegedly taken

against Roden in Virginia and, as such, the court does have jurisdiction over this defendant. As a

result, the motion to dismiss defendant Patel pursuant to Rule 12(b)(2) must be denied.

**II. Motion to Dismiss Defendants Diah, Cohen, Patel and Grimes for Insufficient Process, Insufficient Service of Process, and Failure to Serve Within 120 Days**

Proper service upon an individual may be accomplished by either (1) delivering a copy of

the summons and complaint to the individual personally; (2) leaving a copy of the summons and

complaint at the individual's dwelling or usual abode with someone of suitable age and

discretion who resides there; (3) delivery of a copy of the summons and complaint to an agent

authorized by law or appointment for that purpose; or (4) following state law for service of

8

process. Fed. R. Civ. P. 4(e)(1) and (2). Virginia law provides that a natural person may be served by delivering a copy of process to the party in person or through substituted service by delivering a copy to certain specified persons found at the party's usual place of abode or by posting a copy on the front door of the party's usual place of abode. Va. Code § 8.01-296(1) and (2). A party may also be served through an order of publication if service cannot be otherwise accomplished. Va. Code § 8.01-296(3).

Defendants Diah, Cohen and Patel were all served c/o Ray Byrd, Jr. at 416 South College Avenue in Salem, Virginia. The defendants have attached an affidavit from Mr. Byrd which states that on June 9, 2008, he received summonses directed to Diah, Cohen, and Patel at his Salem office. Byrd further states that none of these defendants maintain a place of business at that address, nor is that their place of residence. Byrd also states that he is not counsel to, employed by, an agent of, an employer of, or a relative by blood or marriage of Diah, Cohen, and Patel. Based upon Byrd's affidavit, the defendants contend that Diah, Cohen and Patel were not properly served under Rule 4(e) and that the 120 day period for service specified in Rule 4(m) has expired. Therefore, defendants Diah, Cohen, and Patel request the court to dismiss the complaint as to them with prejudice.

With regard to defendant Grimes, the defendants have attached the affidavit of Elesa L. Binner. In that affidavit, Ms. Binner states that she is an employee of Huffman & Nixon, P.C., a law firm located at 320 Elm Avenue in Roanoke, Virginia. Binner further states that a person gave her a stack of papers and asked her to give them to Grimes when she walked into the reception area of the building on June 9, 2008. Binner claims, however, that Grimes was not present at the time, that she is not related to Grimes, and that she does not work for Grimes or for

9

any entity associated with Grimes. As a result, the defendants claim that Grimes has not been properly served under Rule 4(e) and that this action must be dismissed against Grimes as well, pursuant to Rule 4(m), as the 120 day period allotted for service has now expired.

The plaintiffs argue that the defendants' submission of affidavits in support of their motion to dismiss has converted the motion into one for summary judgment pursuant to Federal Rule of Civil Procedure 56, which would permit them to submit additional materials to the court outside the pleadings. As the defendants note, however, the affidavits have been submitted only in support of their arguments regarding insufficient process and service of process under Rules 12(b)(4) and (5) and 4(m). Only when matters outside the pleadings are submitted in support of a motion to dismiss pursuant to Rule 12(b)(6) will a motion to dismiss be converted to one for summary judgment. Fed. R. Civ. P. 12(d). Therefore, this argument is without merit, and the motion is properly considered under Rules 12(b)(4) and (5) and 4(m).

The plaintiffs next contend that the defendants waived any claim of insufficient process or insufficient service of process when Grimes and Melvin Williams filed their notice of appearance on behalf of the defendants on June 7, 2007. It appears that the plaintiffs are arguing that this notice of appearance, filed prior to the time they filed their amended complaint, sufficed to permit counsel for the defendants to receive any subsequent filings, including the amended complaint, in lieu of the need for any official service of process upon the defendants. As a result, the plaintiffs also maintain that the court has no jurisdiction over the defendants' motion to dismiss because it was filed in August 2008, well after the ten day deadline for responsive pleadings permitted by Rule 15(a)(3).

The defendants respond that the law of this case is set forth in the magistrate judge's

10

February 29, 2008 order, which states that, as of that date, the plaintiffs had failed to serve a summons and complaint on any defendant and that the defendants had not waived service. Generally, a court should resist revisiting its own decisions, or those of a coordinate court, in the absence of extraordinary circumstances. Christianson v. Colt Indus., 486 U.S. 800, 817 (1988) (internal citation omitted). However, this "law of the case doctrine does not prevent a district judge from implicitly reconsidering a magistrate judge's earlier ruling in the same case." Lettieri v. Equant, Inc., 478 F. 3d 640, 652 (4th Cir. 2007). In any event, the court agrees with the magistrate judge's finding that the defendants did not waive formal service of process by virtue of their attorneys having entered notices of appearance in this matter. See Lewellen v. Morley, 909 F.2d 1071, 1077 (7th Cir. 1990) (holding that the simple entry of an appearance does not constitute a waiver of the requirement for service under Rule 4); Kiro v. Moore, 229 F.R.D. 228, 231 (D.N.M. 2005) (finding that "just as a party does not waive his right to contest personal jurisdiction or venue by having an attorney enter an appearance on their behalf, a party does not waive his right to service of process upon an attorneys' entry of appearance on his behalf").

Given that the plaintiffs were required to make formal service upon the defendants and that they had not done so as of the date of the magistrate judge's order, the plaintiffs next argue that defendant Grimes was properly served and that all of the remaining defendants have been properly served through Grimes. The plaintiffs acknowledge the affidavit of Elesa Binner. However, plaintiffs contend that Binner was located at an office at the same address as Grimes' offices, that she voluntarily received the summons and complaint, that she accepted the documents and agreed to give them to Terry Grimes, that she did in fact give the documents to Grimes, and that Grimes then responded to their action, presumably by filing his motion to

11

dismiss along with his co-defendants. The plaintiffs argue that Binner was qualified to serve the summons and complaint upon Grimes in accordance with Federal Rule of Civil Procedure 4(c) as she is over the age of 18 and not a party to the action. They also contend that Rule 4(e)(2) permits them to serve Grimes at his place of business by leaving the summons and complaint with a "proper party."

The court finds, however, that Grimes was not served personally and that delivery of the summons and complaint to Binner, who is neither an employee, an agent, or a family member of Grimes, does not constitute sufficient service under the Rules. Furthermore, Grimes' office is not his dwelling or usual place of abode as described in Rule 4(e)(2)(B). The court also agrees with the defendants that service upon Grimes, even if properly made, does not constitute proper service on the remaining defendants. As previously discussed, the filing of a notice of appearance by a party's attorney does not waive the service requirement, and a summons must be directed to the particular defendant to be served in order to be effective according to Rule 4(a)(1). In addition, the court notes that the attorney-client relationship, standing alone, does not establish that an attorney is an agent authorized to accept service on behalf of his client. See Davies v. Jobs & Adverts Online, 94 F. Supp. 2d 719, 722 (E.D. Va. 2000) (holding that the mere attorney-client relationship "does not, in itself, convey authority to accept service") (quoting United States v. Ziegler Bolt & Parts Co., 111 F.3d 878, 881 (Fed. Cir. 1997)).

Finally, the plaintiffs assert that defendants Cohen, Diah, and Patel have all been properly served through their agent, I. Ray Byrd, Jr. In this regard, the plaintiffs claim that these defendants, along with Prakruti, are actually an association of owners, co-owners, and general managers that are subject to suit as such an association. See Fed. R. Civ. P. 4(h) (permitting an

12

unincorporated association that is subject to suit under a common name to be served through any agent authorized to receive process). It is true that Byrd is listed as the registered agent of Prakruti with the State Corporation Commission. However, there is no evidence to support the plaintiffs' claim that the defendants are part of an unincorporated association subject to suit under a common name. Rather, these are simply individuals who were co-owners or employees of the Daleville Howard Johnson. Nor is there any evidence in the record to indicate that Cohen, Diah, or Patel authorized Byrd to accept service on their behalf or that Byrd directed the summonses and complaint to them. As a result, only Prakruti was properly served through its agent, Byrd. In the end, the court must conclude that defendants Diah, Cohen, Patel and Grimes have not been properly served in this matter.

This conclusion does not end the discussion, however, because a general appearance in a matter will automatically constitute a waiver of process and is the equivalent of personal service of process. See Lyren v. Ohr, 271 Va. 155, 159 (2006); Nixon v. Rowland, 192 Va. 47, 50 (1951). In Gilpin v. Joyce, 257 Va. 579 (1999), the plaintiff failed to make service of process upon the defendant. After more than a year had passed from the time the action was filed, the defendant then filed a motion to dismiss under Rule 3:3, which does not permit a court to enter judgment against a party who is served with process more than one year after the commencement of an action. 257 Va. 581. At the same time, however, the defendant also filed grounds of defense going to the merits of the plaintiff's case, along with a counterclaim. Id. The Court found that the defendant had not made a special appearance, but instead "by filing a grounds of defense and a counterclaim, Joyce made a general appearance in the trial court proceedings." Id. The Court further held that such a general appearance operates as a waiver of process,

13

"equivalent to personal service, and confers jurisdiction of the person on the court." Id.
Although the Court acknowledged that Va. Code § 8.01-277 permits a person to file a motion to
quash defective service without making a general appearance, the Court determined that the
statute applies only when a defendant has actually been served. Id. at 582. Where a defendant
voluntarily appears, a party may not make a general appearance and still assert a lack of personal
jurisdiction due to insufficient or defective service. Id. See also United States v. Martin, 356 F.
Supp. 2d 621 (W.D. Va. 2005) (holding that a defendant waives his right to service of process by
responding to the merits of the plaintiff's claim) (citing Gilpin, supra, 247 Va. at 581).

Likewise, in this case, the defendants have filed a motion to dismiss asserting both
ineffective service of process and failure to state a claim upon which relief can be granted, the
latter arguments going to the merits of the plaintiffs' claims. The defendants were certainly
entitled to make a special appearance to challenge only the insufficient service of process in this
case. However, by also choosing to address the merits of the plaintiffs' claims and appearing
voluntarily for that purpose, the defendants have made a general appearance. As a result, the
court finds and concludes that defendants Diah, Cohen, Patel and Grimes have waived formal
service of process in this case, and that the case must be decided on the merits.

## III.    Motion to Dismiss All Defendants Pursuant to Rule 12(b)(6)

### A.    Standard of Review

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a court may dismiss a claim upon
the motion of the defendant for failure to state a claim upon which relief may be granted. When
considering a motion to dismiss pursuant to Rule 12(b)(6), the court "should accept as true all
well-pleaded allegations" and should construe those allegations in the light most favorable to the

14

plaintiff. Mylan Labs, Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993). As the Supreme Court

recently noted, a complaint need not assert detailed factual allegations, but must contain "more

than labels and conclusions, and a formulaic recitation of the elements of a cause of action will

not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 127 S. Ct. 1955, 1964-65 (2007).

Furthermore, even assuming the factual allegations in the complaint are true, they "must be

enough to raise a right to relief above the speculative level." 127 S. Ct. at 1965.

**B.      Claims Under 42 U.S.C. §§ 1985 and 1986**

The plaintiffs have asserted several claims under 42 U.S.C. §§ 1985 and 1986 relating to

the defendants' alleged conspiracy to terminate Roden in retaliation for bringing charges against

Knight, to violate Roden's rights to petition and access the courts, and to unlawfully deprive

Haburn of his job. The plaintiffs also charge that defendant Grimes violated §§ 1985 and 1986

through his actions before the Botetourt County General District Court while representing Knight

in relation to the criminal charges brought by Roden.

The plaintiffs' allegations primarily implicate the second clause of 42 U.S.C. § 1985(2)

which prohibits two or more persons from conspiring to impede, hinder, obstruct, or defeat, "in

any manner, the due course of justice in any State or Territory, with intent to deny to any citizen

the equal protection of the laws, or to injure him or his property for lawfully enforcing, or

attempting to enforce, the right of any person, or class of persons, to the equal protection of the

laws." The plaintiffs also claim violations of 42 U.S.C. § 1985(3) which provides, in relevant

part, as follows:

> If two or more persons in any State or Territory conspire or go in disguise on the
> highway or on the premises of another, for the purpose of depriving, either
> directly or indirectly, any person or class of persons of the equal protection of the

15

laws, or of equal privileges and immunities under the laws; . . . in any case of
conspiracy set forth in this section, if one or more persons engaged therein do, or
cause to be done, any act in furtherance of the object of such conspiracy, whereby
another is injured in his person or property, or deprived of having and exercising
any right or privilege of a citizen of the United States, the party so injured or
deprived may have an action for the recovery of damages occasioned by such
injury or deprivation, against any one or more of the conspirators.

It appears that, with regard to § 1985(3), the plaintiffs claim that the defendants conspired to

deprive them of their First Amendment rights and their right to access or petition the courts.

In order to prove a violation of § 1985(3), a plaintiff must be able to demonstrate (1) a

conspiracy of two or more persons, (2) who are motivated by a specific class-based, invidiously

discriminatory animus to (3) deprive the plaintiff of the equal enjoyments of rights secured by the

law to all, (4) and which results in injury to the plaintiff as (5) a consequence of an overt act

committed by the defendants in connection with the conspiracy. Simmons v. Poe, 47 F.3d 1370,

1376 (4th Cir. 1995). Furthermore, the plaintiff must also "show an agreement or a 'meeting of

the minds' by defendants in connection with the conspiracy." Id. at 1377. The requirement for a

showing of a class-based, invidiously discriminatory animus also applies to the second clause of

§ 1985(2) which is implicated by the allegations contained within the plaintiffs' complaint. See

Kush v. Rutledge, 460 U.S. 719, 726 (1986) (holding that "[t]he language requiring intent to

deprive of *equal* protection, or *equal* privileges and immunities, means that there must be some

racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the

conspirators' action.") (quoting Griffin v. Breckenridge, 403 U.S. 88, 102 (1971)) (emphasis in

original).

The defendants contend that the plaintiffs have failed to allege that there was any class-

based, invidiously discriminatory animus behind the defendants' actions, as required under both

16

that portion of § 1985(2) implicated by the plaintiffs' complaint and § 1985(3). The discriminatory animus required under § 1985 must be racial or otherwise class-based. C & H Co. v. Richardson, 78 Fed. Appx. 894, 902-3 (4th Cir. 2003) (quoting Griffin v. Breckenridge, supra, 403 U.S. at 102-03). The plaintiffs first claim that the relevant class in the instant case is one of pro se litigants who brought a state court case which was improperly referenced during the criminal proceedings against Knight in state court. Courts that have considered this issue have generally found that pro se litigants are not a class whose members may pursue a remedy under § 1985. See, e.g., Posr v. Court Officer Shield No. 207, 180 F.3d 409, 419 (2nd Cir. 1999) (noting that the plaintiffs could cite no authority for the proposition that pro se litigants are a protected class); Eitel v. Holland, 787 F.2d 995, 1000 (5th Cir. 1986) (holding that "pro se plaintiffs do not constitute a class for whose members § 1985(3) provides a remedy"); Silo v. City of Philadelphia, 593 F. Supp. 870, 874 (E.D. Pa. 1984) (finding that pro se litigants are "not a class subject to the Civil Rights Act's protection). This court also agrees that the class of pro se litigants is not the type of class which § 1985 was intended to protect.

Furthermore, even if the court were to find that pro se litigants are entitled to protection under § 1985, the plaintiffs have failed to allege that they were discriminated against on that basis. What was cited in the state case against Knight was the plaintiffs' previous lawsuit itself, not the means through which the plaintiffs were represented in that case. As a result, the plaintiffs' have failed to state a claim under 42 U.S.C. §§ 1985(2) or (3) on this basis.

The plaintiffs also contend that they are members of a class of one, or presumably two, citing Village of Willowbrook v. Olech, 528 U.S. 562 (2000). In Olech, the Court examined a claim under the Equal Protection Clause of the Fourteenth Amendment. The plaintiff claimed

17

that the defendant intentionally demanded that she give the municipality a 33 foot easement prior to connecting her home to the municipal water supply, although other homeowners were required to give only a 15 foot easement. 528 U.S. at 563. The Court found that the plaintiff's allegations stated a claim for relief under a claim of equal protection, noting that the Court has "recognized successful equal protection claims brought by a 'class of one,' where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." Id. at 564.

The court notes, first, that Olech was decided in the context of an equal protection claim, and it is questionable whether the reasoning in that case would even apply to the plaintiffs' claims under § 1985. Furthermore, the plaintiffs have alleged only that their rights were violated by the defendants as a result of the charges Roden brought against Knight and the plaintiffs' previous litigation against a third party. There are no allegations that the plaintiffs were intentionally treated differently than any other similarly situated individuals, or even that there are any other similarly situated individuals with whom to compare the plaintiffs' treatment. Therefore, the court concludes that it would not be appropriate to treat the plaintiffs as a class of two persons for purposes of their claims under § 1985.

The plaintiffs have also alleged that the defendants conspired to violate their First Amendment rights to access the courts and to associate with each other. The defendants correctly point out, however, that the Supreme Court has held that "an alleged conspiracy to infringe First Amendment rights is not a violation of § 1985(3) unless it is proved that the state is involved in the conspiracy or that the aim of the conspiracy is to influence the activity of the state." United Brotherhood of Carpenters & Joiners of America, Local 610, AFL-CIO v. Scott,

18

463 U.S. 825, 830 (1983). There are no allegations here which would indicate that the state was involved in the alleged conspiracy or that the defendants' purpose was to influence the activity of the state with regard to the plaintiffs' claims of violations of their First Amendment rights.

With regard to defendant Grimes, the plaintiffs also claim that he conspired with the state court judge presiding over the criminal proceedings against defendant Knight to violate their rights to petition the court and to appear pro se. As previously stated, however, a member of the class of pro se litigants is not entitled to a remedy under § 1985(2) and (3) under the facts alleged by the plaintiffs in this case. Furthermore, the court finds that there is no evidence to indicate that the state court judge entered into an agreement with Grimes to deprive the plaintiffs of their rights under federal or state law or, in fact, for any other purpose. Therefore, the court concludes that the plaintiffs have failed to state a claim under 42 U.S.C. § 1985 with regard to defendant Grimes. Finally, because the court has concluded that the plaintiffs have stated no valid claims under 42 U.S.C. § 1985, their allegations under 42 U.S.C. § 1986 also must fail because such claims are dependent upon the existence of a valid claim under § 1985. Trerice v. Summons, 755 F.2d 1081, 1085 (4th Cir. 1985).

**C.   Violations of the First, Fifth and Fourteenth Amendments**

The plaintiffs have asserted the following constitutional violations in their amended complaint:  that defendants Diah, Cohen, and Patel violated Roden's rights to petition and access the courts under the First Amendment and to access the courts under the Fifth and Fourteenth Amendments; that defendant Grimes violated Roden's rights to fair, adequate, meaningful, and effective access to the courts in violation of the First, Fifth and Fourteenth Amendments; that defendants Grimes, Diah, Cohen, and Patel violated Roden's First Amendment rights of freedom

19

of association, choice, and expression through their attempts to interfere with her relationship with plaintiff Haburn; that defendants Diah, Cohen, and Patel violated Haburn's First Amendment rights of freedom of association, choice, and expression through their attempts to interfere with his relationship with plaintiff Roden, including his termination; that defendant Grimes violated Haburn's First Amendment rights of freedom of association, choice, and expression by advising Cohen, Diah, and Patel to terminate Haburn because of his relationship with Roden; and that Grimes violated Haburn's rights under the First, Fifth and Fourteenth Amendments, as well as under 28 U.S.C. § 1654, by implying in state court that a matter filed by Haburn was unlawful.

Plaintiffs may obtain redress for certain violations of their constitutional rights under 42 U.S.C. § 1983, which provides a cause of action against a person "who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws. . . . " Therefore, only those persons acting under color of state law may be subject to liability for the alleged deprivation of constitutional rights. Wyatt v. Cole, 504 U.S. 158, 161 (1992); S.P. v. City of Takoma Park, 134 F.3d 260, 269 (4th Cir. 1998).

A private party may nonetheless be held accountable as a "state actor" for actions which deprive another of his or her rights, privileges, or immunities under federal law if two requirements are met: (1) the deprivation was caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the State or by a person for whom the State is responsible; and (2) the private party acted together with or obtained significant aid from

20

state officials or engaged in conduct otherwise chargeable to the State. <u>Wyatt</u>, 504 U.S. at 162. The defendants contend that the plaintiffs have failed to allege a sufficient relationship between them and any government entity, that they did not act under color of state law, and that all of the plaintiffs' constitutional claims must fail. The court is compelled to agree.

The plaintiffs have not and cannot allege that the defendants acted in the exercise of a right or privilege created by the State or that their rights were impacted by any rule of conduct imposed by the State. In the case of the Daleville Howard Johnson defendants, their actions were taken as purely private parties for whom the Commonwealth of Virginia had no responsibility. In the case of defendant Grimes, the plaintiffs have alleged that he conspired in some way with the State court judge, a State actor, to deprive them of their rights to petition and access the courts. The nature of their allegations, however, is purely conclusory and does not include any recitation of facts which would support such a relationship. To the contrary, the factual allegations regarding Grimes in the amended complaint relate primarily to his representation of defendant Knight before the General District Court and do not support a conclusion that he was in league with the judge presiding over that Court. Furthermore, to the extent that their claims under § 1983 are based upon their status as <u>pro se</u> litigants, the court has previously held that this classification is not a suspect class for purposes of a claim under the civil rights statutes. Therefore, the court concludes that the plaintiffs have failed to state a claim under 42 U.S.C. § 1983.

The plaintiffs also claim that the defendants deprived them of a property interest without due process in the form of their jobs and their income. Generally, only public employees may assert a property interest in their employment when such an interest stems "from an independent

21

source such as state law-rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." County of Giles v. Wines, 262 Va. 68, 75 (2001) (citing Board of Regents v. Roth, 408 U.S. 564, 577 (1972)). Because the plaintiffs in this case were at-will employees of a private employer, the court finds that they have failed to state a claim for an unlawful deprivation of a property interest.

**D.     Disparate Impact, Disparate Treatment, and Right to Work Without Discrimination**

In the amended complaint, plaintiff Roden has listed claims for disparate impact, disparate treatment, and deprivation of the right to work without discrimination with no additional supporting allegations. The court finds that these claims must fail because the plaintiff has failed to allege that she is a member of any protected class or that she was treated in any unlawful manner due to an unlawful classification. See 42 U.S.C. § 2000e, et seq.

## CONCLUSION

As previously set forth, the court has determined that all of the claims over which this court has original jurisdiction pursuant to 28 U.S.C. § 1331 must be dismissed. It is undisputed that there is a lack of diversity of citizenship among the parties to this case, and that this court does not have diversity jurisdiction over this matter, pursuant to 28 U.S.C. § 1332. Moreover, the court declines to exercise supplemental jurisdiction over the plaintiffs' remaining state claims, pursuant to 28 U.S.C. § 1367(c)(3). Therefore, the court will grant the defendants' motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim for which relief may be granted.

22

The Clerk is directed to send certified copies of this Memorandum Opinion and the accompanying Order to the plaintiffs and all counsel of record.

ENTER:    This 19th day of December, 2008.

_Jsu. G Conrad_
United States District Judge